NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1596-15T3

NEW JERSEY ELECTION LAW
ENFORCEMENT COMMISSION,

    Petitioner-Appellant,

v.

JOSEPH DIVINCENZO and
JORGE MARTINEZ,

    Respondents-Respondents.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **April 25, 2016** |
| **APPELLATE DIVISION** |

Argued March 1, 2016 — Decided April 25, 2016

Before Judges Espinosa, Rothstadt and Currier.

On appeal from the Office of Administrative Law.

Edwin R. Matthews argued the cause for appellant (Bourne, Noll & Kenyon, attorneys; Mr. Matthews, on the brief).

Angelo J. Genova argued the cause for respondents (Genova Burns LLC, attorneys; Mr. Genova, of counsel; Celia S. Bosco, Brett M. Pugach and Kevin R. Miller, on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

The New Jersey Election Law Enforcement Commission (ELEC or the Commission) was created as an independent agency, N.J.S.A. 19:44A-5, charged with the duty to enforce violations of the New

Jersey Campaign Contributions and Expenditures Reporting Act, N.J.S.A. 19:44A-1 to -47 (the Act). The Legislature specified that the Commission shall consist of four members appointed by the Governor to staggered terms and that "[n]o more than two members shall belong to the same political party." N.J.S.A. 19:44A-5. One of the members of the Commission died in November 2011; a second died in August 2015. Neither vacancy has been filled to date. The issues in this case arise from the failure to fill these vacancies.

An administrative law judge (ALJ) dismissed a complaint issued by ELEC against respondents on the ground that ELEC lacked jurisdiction to act because the ALJ concluded ELEC did not have a quorum of members required to issue a complaint. Pursuant to N.J.S.A. 52:14B-10(c), ELEC had forty-five days in which to adopt, reject or modify the ALJ's decision and was permitted to extend that time for one forty-five day period before the ALJ's decision was deemed adopted as the agency's final decision. As a result of an amendment to N.J.S.A. 52:14B-10(c) that became effective March 18, 2014, ELEC could not obtain any further extensions without the consent of the respondents. As the forty-five day extension period was drawing to a close, ELEC sought emergent relief, asking this court to toll the remainder of that period. We granted ELEC leave to file an emergent motion, tolled the forty-

2

five day period pending this decision and have held oral argument on the motion. For the following reasons, we deny ELEC's motion for emergent relief and vacate our prior order tolling the forty-five day period.[1]

I.

In July 2011, the Commission consisted of four members: Chairman Ronald J. DeFilipis, Vice Chairman Walter Timpone, Amos Saunders and Lawrence Weiss.[2] As required by N.J.S.A. 19:44A-5, two of the members were Democrats and two were Republicans. All four members of the Commission voted to conduct a formal investigation into purported violations of the Act by respondents Joseph DiVincenzo, a Democratic candidate, and his campaign treasurer, Jorge Martinez, during the 2010 general election for County Executive of Essex County and prior to the 2014 primary election.

In January 2013, the Commission authorized the issuance of a complaint against respondents. In the time that had passed since the authorization of the investigation, Weiss died and Timpone recused himself. As a result, the complaint was authorized by two

---

[1] The Attorney General declined our invitation to participate in this matter.

[2] The facts, which are largely undisputed, are derived from the pleadings, the written opinion of the trial court judge and the ALJ, and the submissions of counsel.

3

members of the Commission, DeFilipis and Saunders, who were both Republicans. The complaint was issued approximately nine months later in September 2013.

The Commission is authorized to initiate penalty proceedings pursuant to N.J.S.A. 19:44A-22 and N.J.S.A. 19:44A-41.[3] Once the Commission elects to undertake a penalty proceeding under either statute, the respondent is afforded the opportunity for a hearing pursuant to the provisions of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15 and the Uniform Administrative Procedure Rules, N.J.A.C. 1:1-1.1 to -21.6. N.J.A.C. 19:25-17.1. Respondents filed an answer and a request for a hearing. As a result, the matter was transferred to the Office of Administrative Law (OAL) as a contested case pursuant to N.J.S.A. 52:14B-2.

N.J.S.A. 19:44A-22 states:

> b. Upon receiving evidence of any violation of this section, the Election Law Enforcement Commission shall have power to hold, or to cause to be held under the provisions of subsection d. of this section, hearings upon such violation and, upon finding any person to have committed such a violation, to assess such penalty, . . . as it deems proper under the circumstances. . . .
>
> . . . .
>
> d. The commission may designate a hearing officer to hear complaints of violations of this act. Such hearing officer shall take

_____

[3] The complaint is not included in the record before us so it is unclear under which statute the complaint was issued.

4

testimony, compile a record and make factual findings, and shall submit the same to the commission, which shall have power to assess penalties . . . . The commission shall review the record and findings of the hearing officer, but it may also seek such additional testimony as it deems necessary. The commission's determination shall be by majority vote of the entire authorized membership thereof.

[(Emphasis added).]

N.J.S.A. 19:44A-41 contains virtually identical provisions:

b. Upon receiving evidence of any violation of sections 4, 6, 9, 10 or 19 of this act,[4] the Election Law Enforcement Commission shall have power to hold, or to cause to be held under the provisions of subsection d. of this section, hearings upon such violation and, upon finding any person to have committed such a violation, to assess such penalty, . . . as it deems proper under the circumstances . . . .

. . . .

d. The commission may designate a hearing officer to hear complaints of violations of this act. Such hearing officer shall take testimony, compile a record and make factual findings, and shall submit the same to the commission, which shall have power to assess penalties . . . . The commission shall review the record and findings of the hearing officer, but it may also seek such

---

[4] The cited sections of the Act pertain to: contribution limitations, N.J.S.A. 19:44A-29; N.J.S.A. 19:44A-31, repealed by L. 1980, c. 74, § 20; maintenance of separate bank accounts for other funds and disposition of contributions of political committees, N.J.S.A. 19:44A-34; expenditures from the fund for election campaign expenses and return of unexpended funds, N.J.S.A. 19:44A-35; and borrowing of funds by candidates, N.J.S.A. 19:44A-44.

5

additional testimony as it deems necessary. <u>The commission's determination shall be by majority vote of the entire authorized membership thereof</u>.

[(Emphasis added).]

Respondents filed a motion for summary decision pursuant to <u>N.J.A.C.</u> 1:1-12.5. The ALJ issued an initial decision on September 16, 2015, dismissing the Commission's complaint on the ground that the Commission lacked the requisite quorum to issue the complaint and therefore lacked jurisdiction to do so. The ALJ cited "[s]ubsection d.," which he described as "address[ing] the process for hearings in matters where the Commission has seen fit to render charges against an alleged violator."

As quoted above,[5] that paragraph permits the Commission to designate a hearing officer to hear complaints of violations, and authorizes the hearing officer to make factual findings based upon the record that are submitted to the Commission for its review. The paragraph closes with the actions required of the Commission after the hearing officer has made his finding: "The commission shall review the record and findings of the hearing officer, but it may also seek such additional testimony as it deems necessary. <u>The commission's determination shall be by majority vote of the</u>

---

[5] The ALJ did not specify whether he was referring to <u>N.J.S.A.</u> 19:44A-22 or <u>N.J.S.A.</u> 19:44A-41. However, the language he quotes is from the latter statute.

entire authorized membership thereof." N.J.S.A. 19:44A-41(d)
(emphasis added). The ALJ reasoned the "determination" that
required "a majority vote of the entire authorized membership" of
the Commission was not limited to the Commission's determination
regarding the existence of a violation and appropriate penalty.
Instead, the ALJ interpreted "determination" to include all "the
other 'determinations' made by the Commission in relation to the
enforcement process, including the hearing process itself."
Applying this interpretation, the ALJ concluded the Commission
"did not have the required quorum to initiate the complaint" and
that, as a result, the complaint was void ab initio.

The ALJ's decision was, of course, merely a recommendation
to the Commission. N.J.S.A. 52:14B-10(c) governs the process that
culminates in a final administrative agency decision:

> The head of the agency, upon a review of
> the record submitted by the administrative law
> judge, shall adopt, reject or modify the
> recommended report and decision no later than
> 45 days after receipt of such
> recommendations. . . . Unless the head of the
> agency modifies or rejects the report within
> such period, the decision of the
> administrative law judge shall be deemed
> adopted as the final decision of the head of
> the agency. The recommended report and
> decision shall be a part of the record in the
> case. For good cause shown, upon
> certification by the director and the agency
> head, the time limits established herein may
> be subject to a single extension of not more
> than 45 days. Any additional extension of

7

> time shall be subject to, and contingent upon,
> the unanimous agreement of the parties.

[(Emphasis added).]

Under usual circumstances, the ALJ's decision would be subject to review by ELEC, which has the unquestionable authority to reject the ALJ's decision that it lacked jurisdiction to issue the complaint. See N.J.S.A. 52:14B-10(c). At that point, ELEC's final decision would be subject to review by this court. N.J.S.A. 52:14B-12.

However, the circumstances here did not allow for the usual course of events. One month before the ALJ's initial decision, Commissioner Saunders died. Therefore, there were only two members of the Commission at the time the ALJ rendered his initial decision: Commissioner DeFillipis and Commissioner Timpone, who had recused himself. In September 2015, Commissioner Timpone withdrew his recusal to join Commissioner DeFillipis in seeking the single forty-five day extension permitted by N.J.S.A. 52:14B-10(c). Commissioner Timpone recused himself again in October 2015.

With the vacancies on the Commission unfilled, Commissioner DeFillipis was the only acting member of the Commission available to modify or reject the ALJ decision. ELEC concedes it could not convene or take action based upon the participation of one Commissioner. Respondents did not consent to a second extension

8

of time to permit ELEC to modify or reject the ALJ decision. As a result, the ALJ's initial decision would be "deemed adopted" as the agency's final decision at the expiration of the initial forty-five day extension period.

On December 2, 2015, ELEC filed an order to show cause and verified complaint in the Law Division, seeking an additional extension of time "for a period of 45 days after the governor nominates and the state senate confirms persons to fill the two vacancies on the Commission." Respondents filed a motion to dismiss the verified complaint. The trial judge transferred the matter to the Appellate Division. Immediately thereafter, ELEC filed an application for emergent relief from this court, seeking a stay of the deemed-adopted provision, which we granted, pending disposition.[6]

## II.

Neither party has asked us to decide the merits of the issue central to the ALJ's decision, i.e., whether ELEC lacked jurisdiction to issue a complaint because it was authorized by two of the three members at the time. Similarly, we have not been asked to consider whether longstanding inaction in failing to fill

---

[6] Respondents argue the procedure followed to bring this matter before us was defective; that ELEC should have filed a motion for leave to appeal from the ALJ's decision. We find no disqualifying defect in the procedure that brought this matter before us.

9

the vacancies is tantamount to action that strips an agency of its statutory authority and obligations. See In re Plan for the Abolition of the Council on Affordable Hous., 214 N.J. 444, 449 (2013). Our decision is limited to a consideration of whether a stay of the deemed-adopted provision is warranted pending appointment of two new commissioners under the analysis set forth in Crowe v. De Gioia, 90 N.J. 126 (1982).

ELEC argues it is entitled to a stay to maintain the status quo in this matter, which has significant public importance. It contends the Crowe criteria are satisfied because its claim rests upon settled law and has a reasonable probability of success on the merits; it will suffer irreparable harm if relief is not granted; and a balance of the equities clearly demonstrates the hardship to the Commission outweighs any hardship to respondents. Respondents take a contrary position and further argue that this matter presents a non-justiciable political question.[7]

ELEC describes its request for relief as a "stay . . . of a matter before the Commission because the Commission lacks the ability to consider the initial decision of the ALJ and act pursuant to [its] statutory obligation." It contends the Crowe

_____

[7] We need not address the political question argument in light of our disposition.

criteria should be analyzed within the context of "maintaining the status quo until the Commission is in a position to act."

To be entitled to a stay, ELEC must present clear and convincing evidence, <u>Brown v. City of Paterson</u>, 424 <u>N.J. Super.</u> 176, 183 (App. Div. 2012), of each of the following factors:

> (1) relief is needed to prevent irreparable harm; (2) the applicant's claim rests on settled law and has a reasonable probability of succeeding on the merits; and (3) balancing the relative hardships to the parties reveals that greater harm would occur if a stay is not granted than if it were.
>
> [<u>Garden State Equal. v. Dow</u>, 216 <u>N.J.</u> 314, 320 (2013) (citation omitted); <u>see</u> <u>Crowe</u>, <u>supra</u>, 90 <u>N.J.</u> at 132-34.]

A case that "presents an issue of significant public importance" requires the court to "consider the public interest in addition to the traditional <u>Crowe</u> factors." <u>Dow</u>, <u>supra</u>, 216 <u>N.J.</u> at 321 (citation omitted). When the injunction sought "is merely designed to preserve the status quo," the court "may place less emphasis on a particular <u>Crowe</u> factor if another greatly requires the issuance of a remedy." <u>Brown</u>, <u>supra</u>, 424 <u>N.J. Super.</u> at 183 (citation omitted).

### A.

This matter is one of significant public interest for two reasons.

11

First, the public has a substantial interest in the enforcement of the Act. The Legislature declared the State has "a compelling interest in preventing the actuality or appearance of corruption and in protecting public confidence in democratic institutions" that was served by requiring candidates to comply with "limitations, prohibitions and requirements on campaign contributions and the disclosure of the sources and amounts of contributions and expenditures." N.J.S.A. 19:44A-2.1(d), (e). The Act implemented the legislative goal "to ventilate the political process by identifying and monitoring the source and flow of money intended to influence the electoral process." Markwardt v. New Beginnings, 304 N.J. Super. 522, 541 (App. Div. 1997); see also N.J.S.A. 19:44A-2.

ELEC was created to be an independent agency charged with "the duty . . . to enforce the provisions of this act [and] to conduct hearings with regard to possible violations and to impose penalties." N.J.S.A. 19:44A-6(b). The Legislature granted ELEC the authority to "perform such duties as are necessary to implement the provisions" of the Act and its enforcement responsibilities, which included but were not limited to those enumerated in N.J.S.A. 19:44A-6(b). The Commission is authorized "to initiate a civil action in any court of competent jurisdiction for the purpose of enforcing compliance with the provisions of this act or enjoining

12

violations thereof or recovery of any penalty prescribed by this act."  Ibid.  N.J.S.A. 19:44A-6(b) also "empower[s]" ELEC to "[h]old public hearings, investigate allegations of any violations of this act, and issue subpenas for the production of documents and the attendance of witnesses."  N.J.S.A. 19:44A-6(b)(9).[8]  If the ALJ's initial decision is the final word in this case, it threatens the ability of the Commission to discharge its duties.

Second, the circumstances here pit two clearly enunciated legislative objectives against each other: the primacy of an administrative agency to render the final decision in a contested case (which is subject to appellate review), and the importance of precluding unnecessary delay in rendering such a decision by curtailing the extensions an agency may seek to adopt, modify or reject an ALJ's initial decision before it is deemed adopted. N.J.S.A. 52:14B-10(c).

On January 17, 2014, the Legislature approved an amendment to N.J.S.A. 52:14B-10(c), which took effect on March 18, 2014, resulting in the statute's current language.  Prior to the 2014 amendment, N.J.S.A. 52:14B-10(c) provided that "[f]or good cause

---

[8]    Other enumerated delegations of authority include:  the promulgation of regulations; ascertaining whether candidates have complied with requirements; referring possible criminal violations to appropriate prosecuting authorities, N.J.S.A. 19:44A-6(b)7, (10); and rendering advisory opinions through the Commission's legal counsel.  N.J.S.A. 19:44A-6(f).

13

shown . . . the time limits established herein may be subject <u>to</u> <u>extension</u>." <u>N.J.S.A.</u> 52:14B-10(c) (2001), <u>amended by</u> <u>N.J.S.A.</u> 52:14B-10(c) (2013). The amendment sought to "eliminate the provision authorizing the unlimited extension of th[e] 45-day time period, and provide, instead, for a single extension of no more than 45 days for good cause shown." 2012 Legis. Bill Hist. N.J. A.B. 1521 (2014). In 2015, the Legislature amended <u>N.J.A.C.</u> 1:1-18.8(e) to reflect the legislative intent behind the amendment to <u>N.J.S.A.</u> 52:14B-10(c). <u>See</u> 46 <u>N.J.R.</u> 2299(a) ("<u>N.J.A.C.</u> 1:1-18.8(e) and (f) [we]re proposed for amendment to comply with recent legislative changes . . . . [and] amendments to <u>N.J.A.C.</u> 1:1-18.8(e) add that any additional requests for extensions are contingent upon consent of the parties. . . .").

Before the amendment, our courts considered the action or inaction of the agency in determining whether the deemed-adopted provision should be applied. In <u>King v. N.J. Racing Commission</u>, 103 <u>N.J.</u> 412 (1986), the Court observed the "'deemed-approved' provision of <u>N.J.S.A.</u> 52:14B-10(c) should be invoked" when an administrative agency acted "in bad faith, or with inexcusable negligence, or gross indifference, or simply [took] no action . . . 'to adopt, reject or modify'" the ALJ's recommendation within the 45-day period. <u>Id.</u> at 421. The Court found it inappropriate to apply the deemed-adopted provision when

14

the agency had not failed to act in a timely fashion and to do so would thwart an agency's regulatory responsibilities. Id. at 423-24. As amended, the statute does not provide a safe harbor for an agency that is unable to act within the prescribed period through no fault of its own.

However, the potential for conflict between the statutory provisions existed and was recognized even before the 2014 amendment to N.J.S.A. 52:14B-10(c). In King, supra, 103 N.J. at 421, our Supreme Court discussed the contest that existed between agency efficiency and agency responsibility. "[W]hile the OAL is possessed of significant authority in the actual conduct of administrative hearings in contested cases on behalf of administrative agencies, the agency itself retains the exclusive right ultimately to decide these cases." Id. at 420; see also, In re Kallen, 92 N.J. 14, 20 (1983); N.J. Dep't of the Pub. Advocate v. N.J. Bd. of Pub. Utils., 189 N.J. Super. 491, 505 (App. Div. 1983).

The deemed-adopted provision was "intended to thwart undue delay in agency action," King, supra, 103 N.J. at 419, but not to supplant the agency's regulatory responsibilities. Id. at 423-24. Thus, pre-amendment precedent limited application of the deemed-adopted provision to "reserve[e] [the] decisional authority in administrative agencies," In re Appeal of Certain Sections of

15

Unif. Admin. Procedure Rules, 90 N.J. 85, 91 (1982), while still promoting efficiency and protecting against agency bad faith or inexcusable negligence.  Infinity Outdoor, Inc. v. Del. & Raritan Canal Comm'n, 388 N.J. Super. 278, 286-87 (App. Div. 2006).

Although the amendment to N.J.S.A. 52:14B-10(c) sharply limited the agency's ability to obtain multiple extensions of time in which to act, the amendment does not reflect a decision by the Legislature to up-end the allocation of responsibilities.  Still, the amendment eliminates any consideration of whether the failure to act within the prescribed time period is due to circumstances beyond the agency's control.  It is up to the Legislature to clarify if this is a matter of unintended consequences.

B.

In considering the public importance of this controversy, we also note that the ALJ's reasoning was not unassailable.  See Dow, supra, 216 N.J. at 320 ("To evaluate an application for a stay, this Court in essence considers the soundness of the trial court's ruling and the effect of a stay on the parties and the public.").

Under the common law quorum rule, "a majority of all the members of a municipal governing body constitute[s] a quorum; and in the event of a vacancy a quorum consists of a majority of the remaining members."  Ross v. Miller, 115 N.J.L. 61-63 (1935); see also Matawan Req'l Teachers Ass'n v. Matawan-Aberdeen Req'l Sch.

16

Dist. Bd. of Educ., 223 N.J. Super. 504, 507 (App. Div. 1988) ("At common law, a majority of a public body constitutes a quorum.").

In King, supra, 103 N.J. at 418, our Supreme Court addressed statutory quorum language mirroring the common law quorum rule, finding:

> [I]t is not relevant whether a member is physically absent, is disqualified because of interest, bias, or prejudice, or other good cause, or voluntarily recuses herself or himself. A member who is disqualified from participating in a particular matter may not be counted in determining the presence of a legal quorum.
>
> [Ibid. (emphasis added).]

Thus, under the common law quorum rule, any position left vacant, either by death or recusal due to conflict of interest, is not counted to determine what the legal quorum is.

The common law rule applies absent a "pertinent statute to the contrary." King v. N.J. Racing Comm'n, 205 N.J. Super. 411, 415 (App. Div. 1985), rev'd on other grounds, 103 N.J. 412 (1986). See Hainesport Twp. v. Burlington Cnty. Bd. of Taxation, 25 N.J. Tax 138, 147 (Tax 2009) (discussing statutes requiring a "majority of all the members" as "evidenc[ing] a legislative intent to modify the common law rule"); see also 1991 Formal Op. Att'y Gen. N.J. No. 3 (May 7, 1991) ("Laws which define a quorum as a majority or larger percentage of 'all the members' or of 'the authorized membership,' or words to that effect, must . . . be read as

17

requiring a fixed number of members which remains constant despite any vacancies.").

The last sentence of subsection (d) states: "The commission's determination shall be by majority vote of the entire authorized membership thereof."  It is undisputed that this language constitutes a departure from the common law quorum requirement and requires "three votes of the entire authorized membership of four." Therefore, any "determination" to which that language applies must be by a vote of at least three of the four commissioners.  The issue before the ALJ was what actions of the Commission are subject to that requirement.

The "determination" that must be made by a "majority vote of the entire authorized membership" of the Commission is not defined in the Act.  See N.J.S.A. 19:44A-3.  However, the definitions for "contested case" and "administrative adjudication" or "adjudication" contained in the APA provide insight into the Legislature's usage of the term.  Those definitions, in pertinent part, are:

> "Administrative adjudication" or "adjudication" includes any and every <u>final determination, decision or order</u> made or rendered in any contested case.
>
> "Contested case" means a proceeding . . . in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute <u>to be</u>

18

> determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing . . . .
>
> [N.J.S.A. 52:14B-2(b)-(c).[9]]

Clearly, there are a number of steps in the enforcement process that precede determinations that a violation has occurred and the appropriate penalty. The Act does not explicitly state what number of commissioners must vote in favor of any of the actions enumerated in N.J.S.A. 19:44A-6 before the Commission may proceed. This omission stands in sharp contrast to statutes that specify the quorum necessary for any action of an agency. See, e.g., N.J.S.A. 5:5-29 ("[A] majority of the [New Jersey Racing] [C]ommission shall constitute a quorum for the transaction of any business, for the performance of any duty, or for the exercise of any power of the commission."). Similarly, both N.J.S.A. 19:44A-22 and N.J.S.A. 19:44A-41 provide a procedure for hearing evidence of violations. They are silent as to the number of commissioners required to decide to hear such evidence. Both statutes only establish a requirement for the number of commissioners necessary for a "determination" following a review of the record. See N.J.S.A. 19:44A-22(d); N.J.S.A. 19:44A-41(d).

---

[9] There are two versions of this section, the latter being operative as of July 1, 2014. However, the definitions of these terms remain unchanged.

A-1596-15T3

A reasonable inference can be drawn that the "determination" that requires authorization by a "majority vote of the entire authorized membership" pertains to final decisions and not to the preliminary steps ELEC must take to consider evidence of violations.[10] See Higgins v. Pascack Valley Hosp., 158 N.J. 404, 419 (1999) ("When 'the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded.'" (citation omitted)). The ALJ's conclusion to the contrary is therefore subject to legitimate debate, if not outright rejection.

### III.

Giving due consideration to the public importance of this matter, we turn to review the application of the Crowe factors here. Supra, 90 N.J. at 132-34.

### A.

Because there is only one commissioner available to review the ALJ's decision in light of the deaths of the other commissioners and the recusal of Commissioner Timpone, it is undisputed that ELEC cannot act. ELEC argues it will suffer irreparable harm if the stay is not granted because it will be

---

[10] We note that Commissioner Timpone withdrew his recusal to permit him to join the other commissioner in seeking the initial extension of the forty-five day period pursuant to N.J.S.A. 52:14B-10(c). No argument has been presented that the action, undertaken by two commissioners, was unauthorized.

20

deprived of its statutory right to "adopt, reject or modify" the ALJ's decision.  N.J.S.A. 52:14B-10. ELEC also contends the public's confidence in the integrity of the election law enforcement process will be eroded if a decision is accorded finality through "a flawed process that prevented an appropriate review of an initial OAL decision" by either the Commission or this court.

Respondents counter that ELEC cannot make the requisite showing of immediate and irreparable harm.  They note that the amendment to N.J.S.A. 52:14B-10(c) in 2014 was plainly intended to limit an agency's previously unfettered ability to obtain serial extensions that unnecessarily delayed a final decision.  They argue that the "harm" identified by ELEC is merely the operation of the clear language of N.J.S.A. 52:14B-10(c), a result contemplated by the Legislature in enacting the amendment.

The claim of immediate and irreparable harm to ELEC requires consideration of whether the operation of the deemed-adopted provision here precludes ELEC from taking further action regarding possible violations of the Act by respondents.

First, there does not appear to be an immediate threat that enforcement action will be precluded by the applicable statute of limitations.  Pursuant to N.J.S.A. 2A:14-1.2(a), "any civil action commenced by the State shall be commenced within ten years next

21

after the cause of action shall have accrued."[11]   Because the violations at issue arise from the 2010 and 2014 elections, it is reasonable to infer that the action will not be extinguished in its entirety in the near future or before the vacancies on the Commission are filled.  Although we offer no opinion as to the application of res judicata, we note that the ALJ's decision was that the complaint was void ab initio and was not an adjudication on the merits.  See Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 415-16 (1991); R. 4:37-2(d).

In addition, an administrative agency has the inherent power to reconsider its own final decision.  See, e.g., In re Trantino, 89 N.J. 347, 364 (1982); Mastro v. Bd. of Trs., Pub. Emps.' Ret. Sys., 266 N.J. Super. 445, 452 (App. Div. 1993).  In Mastro, supra, 266 N.J. Super. at 452, we pondered whether an agency had the authority to reconsider a final decision that has resulted from the automatic adoption of an ALJ's initial decision.  We observed, "if an agency is denied the power to reconsider even a manifestly erroneous decision deemed approved pursuant to N.J.S.A. 52:14B-10(c), the agency could be thwarted in the performance of its regulatory responsibilities."  Ibid.  (citation omitted).  And, we noted that if the agency lacked such power, "it is arguable

---

[11]   ELEC agrees that a ten-year statute of limitations applies. Respondents do not agree.

22

that the agency should be allowed to appeal to this court to seek reversal of a manifestly erroneous decision." Ibid. n.1.

Finally, we note that, pursuant to the doctrine of necessity, a commissioner's voluntary disqualification need not pose an insuperable obstacle to the Commission's ability to act. The rule of necessity "allow[s] a governing body member who has a conflict to participate in a vote, where a quorum would otherwise not be available." Mt. Hill, LLC v. Middletown Twp., 353 N.J. Super. 57, 61 (App. Div.), certif. denied, 175 N.J. 78 (2002); see also Wyzykowski v. Rizas, 132 N.J. 509, 528 (1993); Cranberry Lake Quarry Co. v. Johnson, 95 N.J. Super. 495, 550-51 (App. Div.) (holding the doctrine of necessity "has been traditionally applied to situations where disqualification of a person acting in a judicial capacity would prevent consideration of a matter which must necessarily be disposed of"), certif. denied, 50 N.J. 300 (1967); Gunthner v. Planning Bd. of Borough of Bay Head, 335 N.J. Super. 452, 462 (Law Div. 2000).

We recognize the viability of these options is unsettled; that their effectiveness in alleviating the harm claimed is uncertain and that further litigation may be pursued. Our purpose in discussing them is merely to assess ELEC's claim it will suffer immediate and irreparable harm. The fact that alternatives may face legal challenges does not render them unavailable or subject

ELEC to immediate and irreparable harm if its preferred remedy is denied.

B.

ELEC argues the issue of whether its claim is based on settled law and has a reasonable probability of success pertains not to the merits of the ALJ's decision, but rather, to whether the OAL had the authority to consider the motion brought by respondents and decide a jurisdictional issue. ELEC contends it is the exclusive province of this court to decide the jurisdictional issue and that the application of the "deemed-adopted" provision here transforms the ALJ's initial decision into a virtually unreviewable final decision. Respondents argue there is no legal support for ELEC's premise that the ALJ may not dismiss a complaint on jurisdictional grounds.[12]

Respondents challenged the issuance of the complaint by filing a motion for summary disposition pursuant to N.J.A.C. 1:1-12.5(a), which permits a party to move for summary decision "upon all or any of the substantive issues in a contested case." The subject matter of these motions is not limited by either statute or regulation. ELEC has not provided any legal authority to

---

[12] Respondents also argue that ELEC has raised the jurisdictional issue for the first time before us. A review of the record shows otherwise.

24

support the conclusion that the ALJ lacked authority to dismiss the complaint on jurisdictional grounds.

## C.

Addressing the balancing of hardships, ELEC contends the hardship claimed by respondents is "at best illusory if not nonexistent" and far outweighed by the hardship it will suffer if the stay is not granted. In addition to expressing concern that efforts to pursue alternatives will be hampered by legal challenges, ELEC states it suffers substantial harm as a result of the considerable delay resulting from the referral of the matter to the OAL as a contested case and the anticipated delay until its vacancies are filled.

Respondents argue they are entitled to a final disposition, that they have been highly prejudiced by ELEC's actions and that the prejudice would be exacerbated if ELEC's request for an open-ended extension of time were granted. Within the context of a speedy trial violation, it has been suggested "that every unresolved case carries with it some measure of anxiety" because the accused "lives under a cloud of anxiety, suspicion, and often hostility." State v. Cahill, 213 N.J. 253, 275 (2013) (citations omitted). The harm caused by unresolved allegations here is real and not illusory. Respondent DiVincenzo is an elected official actively involved in public life. If unresolved indefinitely, the

25

complaint creates a cloud over the integrity of his campaign finances, including future campaigns.

In summary, the legal argument ELEC relies upon — that the ALJ lacked authority to decide a jurisdictional issue — is not rooted in settled law and has not been shown to have a reasonable probability of success on the merits. Although ELEC expresses concern that the availability of alternative avenues for pursuing its investigation is uncertain, the fact that its efforts may be the subject of further litigation does not, alone, render them futile. We therefore conclude ELEC has failed to show by clear and convincing evidence that it will suffer irreparable harm if the indefinite stay requested is not granted. ELEC advances a legitimate concern that the public's confidence in the integrity of the political process may be compromised when its enforcement efforts are hobbled by the actions and inaction of other branches of government. However, the public — and respondents — also have an interest in having such enforcement efforts resolved in a reasonable, and not unlimited, period of time, rather than have unproven allegations of wrongdoing endure. We therefore conclude that, even in light of the public interests here, the balance of hardships does not support ELEC's motion for a stay that tolls the forty-five day extension period until such time as its roster of commissioners is filled.

26

The motion for a stay is denied and the order tolling the forty-five day period before the ALJ's recommendation is deemed adopted is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

27

A-1596-15T3