NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3675-15T1

IN THE MATTER OF WILLIAM R.
HENDRICKSON, JR., DEPARTMENT
OF COMMUNITY AFFAIRS.

APPROVED FOR PUBLICATION

July 19, 2017

APPELLATE DIVISION

Argued December 21, 2016 — Decided July 19, 2017

Before Judges Alvarez, Manahan, and Lisa.[1]

On appeal from the Civil Service Commission,
Docket No. 2015-859.

Melanie R. Walter, Deputy Attorney General,
argued the cause for appellant New Jersey
Department of Community Affairs (Christopher
S. Porrino, Attorney General, attorney;
Melissa H. Raksa, Assistant Attorney
General, of counsel; Ms. Walter, on the
briefs).

Arnold Shep Cohen argued the cause for
respondent William Hendrickson (Oxfeld
Cohen, P.C., attorneys; Mr. Cohen, of
counsel and on the brief).

---

[1] This appeal was argued before Judges Carmen H. Alvarez and
Carol E. Higbee.  The opinion was not approved for filing prior
to Judge Higbee's death on January 3, 2017.  Pursuant to Rule
2:13-2(b), "Appeals shall be decided by panels of 2 judges
designated by the presiding judge of the part except when the
presiding judge determines that an appeal should be determined
by a panel of 3 judges."  That rule further provides that if a
judge is added after argument who did not participate in the
argument, the appeal shall be reargued "unless reargument is
waived."  The presiding judge has determined that this appeal
shall be decided by a panel of three judges, and the parties
have consented to the addition to the panel of Judges Thomas V.
Manahan and Joseph F. Lisa and have waived reargument.

Christopher S. Porrino, Attorney General, attorney for respondent Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

The opinion of the court was delivered by

ALVAREZ, P.J.A.D.

The Department of Community Affairs (DCA) appeals from a December 21, 2015 administrative law judge's (ALJ) decision reducing the Bureau of Fire Code Enforcement's[2] (Bureau) disciplinary action terminating William Hendrickson, a fire safety inspector, to a six-month suspension. Because the Civil Service Commission (CSC or Commission) did not have a full roster of three members constituting a quorum, N.J.S.A. 11A:2-3, it could not adopt or reject the ALJ's decision until months after the mandatory forty-five-day time frame elapsed. See N.J.S.A. 52:14B-10(c). Thus the ALJ's initial decision was "deemed-adopted" as the Commission's final decision.[3] Ibid.

---

[2] The Bureau of Fire Code Enforcement operates within the Division of Fire Safety. The Division of Fire Safety "is established in the Department of Community Affairs[.]" N.J.S.A. 52:27D-25b.

[3] Hendrickson does not challenge the DCA's right to pursue an appeal of the Commission's final decision when it results from application of the deemed-adopted statute. That question remains for another day. See Mastro v. Bd. of Trs., Pub. Emps.' Ret. Sys., 266 N.J. Super. 445, 452-53 (App. Div. 1993). Had the Commission rendered a decision in the normal course, the DCA
(continued)

For the reasons that follow, we conclude that when the lack of a quorum attributable to vacancies caused the agency inaction, the current version of the deemed-adopted statute does not require traditional deferential appellate review of the ALJ's decision. Applying the standard of review applicable to bench trials, we vacate the six-month suspension and reinstate the DCA's decision ending Hendrickson's employment.

After the departmental hearing, the DCA issued a final notice of disciplinary action (FNDA) imposing the sanction of removal. Hendrickson appealed and the matter was transmitted to the Office of Administrative Law (OAL) for a hearing as a contested case under the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15, and the Uniform Administrative Procedure Rules, N.J.A.C. 1:1-1.1 to -21.6.

The preliminary notice of disciplinary action (PNDA) that followed the incident charged Hendrickson with conduct unbecoming an employee, N.J.A.C. 4A:2-2.3(a)(6); discrimination that affects equal employment opportunity, including sexual harassment, N.J.A.C. 4A:2-2.3(a)(9); and other sufficient cause,

_____

(continued)
would have the right of appeal. See In re Stallworth, 208 N.J. 182, 191 (2011) (agency appealed Commission's final decision modifying employee's removal to a suspension).

in violation of New Jersey's state policy prohibiting discrimination in the workplace, N.J.A.C. 4A:2-2.3(a)(12).

The incident that triggered disciplinary proceedings was described by the eyewitnesses, two of Hendrickson's co-workers, at the administrative law hearing. Briefly, on December 1, 2013, when Hendrickson and the others began their shifts in the parking lot of a sports stadium, a supervisor modified Hendrickson's work assignment. Hendrickson was overheard by his co-workers calling his supervisor, a woman, a "f---ing c--t." Hendrickson testified that he did not remember using that language, but admitted saying that he wished "she [would get] a disease."

The ALJ's written decision found the outburst occurred as Hendrickson's co-workers had described, and further found Hendrickson's failure of memory to be incredible. Since the language he used was "akin to a racial slur[,]" the ALJ therefore concluded that DCA had met its burden of proof by a preponderance of the credible evidence.

The ALJ also observed that Hendrickson's use of obscenities in the presence of other employees hurt the morale of both the supervisor as well as the co-workers who heard "the gender slur." Furthermore, because the incident occurred in a parking lot, she took "into consideration the possibility that members

of the public also heard the gender slur and inappropriate comments." The ALJ held that Hendrickson had violated the New Jersey state policy prohibiting discrimination in the workplace, defined in the handbook he was provided when he commenced employment with the Bureau fifteen or sixteen months prior.

In weighing the appropriate discipline for the misconduct, the ALJ took into account that this was the first blemish in Hendrickson's disciplinary record, and that he incurred no other charges for the months he worked with the Bureau thereafter. Although troubled by his denial of having made the statement by virtue of lack of memory, and refusal to acknowledge his wrongdoing, she opined that removal was unwarranted. Considering "the nature of the offense, the concept of progressive discipline, and the employee's prior work record []," the ALJ determined that "removal was excessive []" and that a six-month term of suspension sufficed. The OAL transmitted the initial decision to the CSC and the parties filed exceptions.

On the first date the initial decision was scheduled for review by the Commission, it consisted of only one member, the other seats being vacant.[4] Accordingly, the CSC obtained a

---

[4] When CSC members, Thomas Perna's and Richard Williams's, terms ended in December 2015, the CSC was left with only one member,
(continued)

forty-five-day extension to March 20, 2016, pursuant to statute. See N.J.S.A. 52:14B-10(c). Because on that date it still did not have a sufficient number of appointed members to constitute a quorum, the agency requested a second forty-five-day extension from the parties. Hendrickson did not consent. See id.; N.J.A.C. 1:1-18.8(f) ("Extensions for filing initial or final decisions may not exceed [forty-five] days from the original decision due date. Additional extensions of not more than [forty-five] days each may be granted only for good cause shown. For final decisions, the order must additionally state that unanimous consent to extend the due date was obtained from the parties.").

Under the deemed-adopted statute, no further extensions could be granted to the Commission. Thus, the ALJ's initial decision was deemed to be the final pronouncement on the matter. See In re Restrepo, 449 N.J. Super. 409, 418 (App. Div. 2017); N.J. Election Law Enf't Comm'n v. DiVincenzo, 445 N.J. Super. 187, 197-99 (App. Div. 2016).

---

(continued)
Chairperson Robert Czech. The CSC met regularly during 2015 with Czech, Perna, and Williams. However, beginning in January 2016, the CSC cancelled all of its meetings through October 2016 due to Czech being the only member remaining on the CSC. On October 19, 2016, the CSC began holding regular meetings with its now current members, Czech, Dolores Gorczyca, and Daniel O'Mullan. See Meetings of the Civil Service Commission, available at http://www.state.nj.us/csc/about/meetings/schedule.

On appeal, the DCA contends that Hendrickson's conduct warranted the termination originally imposed, not merely a six-month suspension. The DCA also contends that Hendrickson's egregious conduct violated not only the State's anti-discrimination policy, but basic behavioral norms that the agency has a right to expect from its employees.

Finally, the DCA asserts that the ALJ's analysis of Hendrickson's work history, if anything, supported termination. The agency argues that if a new employee engages in significant misconduct directed at a supervisor in response to a routine work change, he patently lacks the good judgment and self-control necessary for a fire code inspector. Persons employed in that capacity must interact with the public regularly. In the DCA's view, Hendrickson's nine subsequent incident-free months do not offset the egregious conduct. The DCA also urges us to consider the level of trust reposed in a fire inspector, who conducts essential safety inspections and monitors the implementation of fire safety standards.

Hendrickson responds that the ALJ's decision is "deemed adopted" under the statute, is the final agency decision, and therefore entitled to deferential review as a matter of law. He further claims that termination is an unwarranted overreaction

by the DCA, and not in line with other cases regarding employee misconduct.

The process by which an ALJ's initial decision in a contested case becomes the final agency decision is spelled out in the statute:

> The head of the agency, upon a review of the record submitted by the [ALJ], shall adopt, reject or modify the recommended report and decision no later than [forty-five] days after receipt of such recommendations . . . . Unless the head of the agency modifies or rejects the report within such period, the decision of the [ALJ] shall be deemed adopted as the final decision of the head of the agency.
>
> [N.J.S.A. 52:14B-10(c).]

In prior years, the statute allowed the time limits to be extended for "good cause shown." N.J.S.A. 52:14B-10(c) (2001), amended by N.J.S.A. 52:14B-10(c) (2013). The prior version of the statute read: "For good cause shown, upon certification by the director and the agency head, the time limits established herein may be subject to extension." Ibid. Now, however, that possibility no longer exists.

The 2014 amendment to the statute requires "unanimous agreement of the parties" as the only means for an extension of time beyond an initial forty-five days. N.J.S.A. 52:14B-10(c).

In most cases in which the agency seeks an extension, unanimous agreement is unattainable. A prevailing party has no

reason to agree. Effectively then, the current statute makes no distinction between agency failures to act that are unavoidable, such as the lack of a quorum, and those to which some "fault" can be attributed. The implementing regulation, N.J.A.C. 1:1-18.8(f), is similarly worded.

Our caselaw has historically disfavored automatic approval statutes such as the deemed-adopted law. King v. N.J. Racing Comm'n, 103 N.J. 412, 422 (1986). While recognizing the need for the provision in the statute "to encourage prompt consideration and disposition of contested cases[,]" the Court was also mindful of "agency jurisdiction and regulatory responsibility." Id. at 419-20.

In discussing the necessary balance between the two competing interests, the Court explained the creation of the OAL thusly:

> While the statute creating the OAL focuses on the integrity of the hearing function, it also seeks to foster, enhance, and preserve agency jurisdiction and regulatory responsibility. See Unemployed-Employed Council v. Horn, 85 N.J. 646 (1981). The Court in [In re Uniform Administrative Procedure Rules, 90 N.J. 85 (1982)] stressed that while the OAL is possessed of significant authority in the actual conduct of administrative hearings in contested cases on behalf of administrative agencies, the agency itself retains the exclusive right ultimately to decide these cases. [Id. at 96.] In In re Kallen, 92 N.J. 14 (1983), the Court emphasized that the agency itself

> in the exercise of its essential
> jurisdiction has the exclusive right to
> decide contested cases in administrative
> hearings. Id. at 20. The Court further
> observed the agency's jurisdiction in the
> final analysis is nondelegable and that the
> agency head remains accountable for the
> efficient and effective use of public
> resources in carrying out the agency's
> delegated statutory responsibilities. Id.
> at 21.
>
> [King, supra, 103 N.J. at 420.]

For that reason, i.e. the need to offset an agency's expertise, jurisdiction, and authority against the benefit of prompt disposition of contested cases through transmission to the OAL, the Court held that the deemed-adopted statute would not be applied unless the agency acted in "bad faith," with "inexcusable negligence, or with gross indifference." Id. at 421. In King, because the agency decision was unavoidable—the lack of a quorum—the deemed-adopted statute was not applied. Id. at 421-23. Instead, the matter was remanded for the agency "to take remedial steps to cure the deficiency and to issue a decision." Id. at 423.

The Court in Matturri v. Board of Trustees of the Judicial Retirement System, 173 N.J. 368 (2002) reaffirmed the need to balance deference to an agency's expertise against the need to promptly dispose of contested cases. Id. at 378-81. In that case, the State House Commission, "a most unusual agency head,"

failed to timely respond to an ALJ decision in the area of judicial pensions. Id. at 380. Because the agency head was required to meet only every three months, and rarely met more frequently, it missed the deadline by two and one-half weeks. Id. at 376, 380. The Court said: "[i]t would make little sense to apply the automatic approval provision of N.J.S.A. 52:14B-10(c) on these facts simply for the sake of agency efficiency[,]" and declined to do so. Id. at 381.

In sum, the pre-2014 amendment precedent limited application of the deemed-adopted provision to "reserve [the] decisional authority in administrative agencies . . . while still promoting efficiency and protecting against agency bad faith or inexcusable negligence." N.J. Election, supra, 445 N.J. Super. at 198-99 (alteration in original) (internal citation and quotation marks omitted).

Pre-amendment examples of the gross indifference, inexcusable neglect, or bad faith that made imposition of the deemed-adopted statute appropriate can be found in Capone v. New Jersey Racing Commission, 358 N.J. Super. 339, 341 (App. Div. 2003). In Capone, the Racing Commission delayed seven months as to one matter, and over a year on another. Ibid. In both instances, "the records were small and the issues simple . . . ." Id. at 349-50. The Racing Commission historically had

difficulties meeting its review responsibilities, and other published cases had addressed the problem, to little effect. Because we found the Racing Commission's failure to issue decisions to be inexcusable neglect or gross indifference to agency and regulatory responsibilities, the deemed-adopted statute was applied. Id. at 350.

The circumstances here are entirely different from those described in Capone, and are more like the scenarios in King and in Matturri. The Commission's inability to act was entirely beyond its control. Under the prior iteration of the deemed-adopted statute, when good cause excused agency inaction, as in King, the Court remanded the matter to allow the agency to apply its expertise, implement its legislative mandate, and render the final decision. In Matturri, the agency requested and received an extension granted out of time, and that decision was affirmed. Absent that "good cause" escape clause, as in the case with the current version of the law, remand is not possible.

Because automatic approval statutes are held in disfavor, and we have historically deferred to an agency's expertise on appellate review, some accommodation should be made when an agency's inability to act on a timely basis is entirely involuntary. Certainly it was not the Legislature's intent when it enacted the 2014 version of the statute, which seemingly has

12

no escape clause, to "up-end the allocation of [regulatory] responsibilities." See N.J. Election, supra, 445 N.J. Super. at 199.

We only play a limited role on the appeal of administrative agency decisions. Stallworth, supra, 208 N.J. at 194. To reverse an agency's decision, it must be demonstrated to be arbitrary, capricious, or unreasonable. Ibid. In making that determination, the following factors are taken into account:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

> [Ibid. (quoting In re Carter, 191 N.J. 474, at 482-83 (2007)).]

This highly deferential review of agency decisions is animated by our acknowledgment of an agency's particular and superior expertise in the legislative arena in which it functions. Id. at 195.

The deferential standard of review applies to disciplinary actions. Ibid. With regard to such sanctions, we ordinarily do not substitute our judgment for that of the agency, even though we might have reached a different result. Id. at 194-95. We

only do so when the "punishment is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness."  Id. at 195 (quoting Carter, supra, 191 N.J. at 484).

Accordingly, we conclude that, in applying the deemed-adopted statute, we must attempt to balance the Legislature's commitment to the timely disposition of contested cases in the OAL with the ability of regulatory agencies to act within their own statutorily defined responsibilities.  See King, supra, 103 N.J. at 419-21; Matturri, supra, 173 N.J. at 379-80.  In maintaining that balance, it follows that, at a minimum, an ALJ's deemed-adopted decision should not be reviewed deferentially.  The rationale behind that deferential review provides additional support for our conclusion.

We will therefore apply the equally familiar standard of review for bench trials.  The ALJ's factual findings will be affirmed to the extent they are supported by substantial credible evidence in the record.  Zaman v. Felton, 219 N.J. 199, 215 (2014).  No deference will be accorded to her legal conclusions; they will be reviewed de novo.  Id. at 216.

Initially, we note that the ALJ credited the eyewitness testimony that Hendrickson used the particular gender-specific foul language towards his supervisor while in a public place.

The ALJ did not accept his lapse in memory as truthful. Additionally, she was troubled by his "failure to acknowledge his wrongdoing" even though he admitted saying he wished his supervisor would get a disease. Despite finding Hendrickson engaged in the conduct, and holding that it violated the State's policy against discrimination and was unacceptable both towards other employees and the public, she considered the doctrine of progressive discipline required a lesser penalty than termination. The ALJ's factual findings are supported by the record; the propriety of the disciplinary sanction, however, is a question of law which we will review de novo.

It was clear from her decision that the ALJ was at least uncomfortable with Hendrickson's lack of candor and remorse, while concerned that his clean disciplinary record before and after the event mandated a lesser sanction. Hendrickson's job, which involves enforcement of safety standards while interacting with the public, bears similarity to the role played by law enforcement officials. The record does not allow for a more detailed comparison, but it cannot be disputed that Hendrickson is required to interact with members of the public in performing enforcement duties that impact public safety.

The concept of progressive discipline has been employed to impose severe disciplinary sanction when a public employee's

misconduct is habitual, or to mitigate a penalty. In re Herrmann, 192 N.J. 19, 30-33 (2007). When employed to mitigate, it results in incremental punishment. Id. at 33. But, the doctrine has been bypassed "when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest." Ibid.; see State v. Saavedra, 222 N.J. 39, 74 (2016) (noting New Jersey's "long-expressed [] strong public policy against discrimination" in the workplace); Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 600 (1993) ("Freedom from discrimination is one of the fundamental principles of our society. Discrimination based on gender is 'peculiarly repugnant in a society which prides itself on judging each individual by his or her merits.'" (quoting Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 96 (1990))). Additionally, the doctrine will not be applied if an employee "engages in severe misconduct, especially when the employee's position involves public safety and the misconduct causes risk of harm to persons or property." In re Herrmann, supra, 192 N.J. at 33. Termination has been affirmed where the employee's conduct was unbecoming his or her position regardless of a blameless work history. Id. at 34.

16

In this case, in addition to the fact Hendrickson's position involves public safety and requires interaction with the public, his lack of truthfulness during the hearing, and lack of remorse for his loss of control, make him a poor choice for incremental discipline. As a result, we find as a matter of law that the conduct of this fire inspector warranted termination. Incremental sanctions in light of his job responsibilities, which require interaction with the public, are too much of a risk. And his lack of candor and remorse do not inspire confidence in his ability to conduct himself in a measured fashion in an undoubtedly demanding position. This incident, at the very beginning of Hendrickson's career, augured ill for his future.

The incident violated the State's anti-discrimination policy and societal norms. As a matter of law, the doctrine of progressive discipline should be bypassed.

Reversed; the original sanction of termination is reinstated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3675-15T1