**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1560-24

HOWARD ZLOTKIN,

 Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION AND
ANNUITY FUND,

 Respondent-Respondent.

_____

Submitted January 28, 2026 – Decided March 3, 2026

Before Judges Smith and Berdote Byrne.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury.

Howard Zlotkin, self-represented appellant.

Jennifer Davenport, Acting Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Payal Y. Ved, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Howard Zlotkin appeals from the final administrative decision of the Board of Trustees, Teachers' Pension and Annuity Fund (the Board), which imposed a ten percent forfeiture of his monthly pension benefits following a classroom incident involving heated remarks on political and racial subjects. The Board's decision modified factual findings and rejected the recommendation of the Administrative Law Judge (ALJ), who concluded a reduced forfeiture of sixty-four days of lost service was warranted based on the nature and circumstances of the misconduct.

After careful review, we reverse and reinstate the ALJ determination. The Board failed to act within the statutorily mandated forty-five-day period to modify or reject the ALJ's initial decision and did not request a timely extension, as required by N.J.S.A. 52:14B-10(c). Therefore, the ALJ's determination must be deemed the final administrative determination.

I.

Zlotkin was employed as a science teacher by Jersey City Public Schools and held teaching certificates for grades K-8, biological science, and earth science for twenty years. On April 28, 2021, Zlotkin taught a high school "Landscape and Design" class via Zoom. During the session, he asked students to formulate and present to him a hypothesis, which he believed would

2

encourage student engagement he perceived was lacking during the COVID-19 pandemic. The students' hypothesis was that all white people are privileged. Zlotkin reacted poorly, attempting to explain why he felt the statement was inaccurate, hurtful, and disrespectful. For about two minutes, Zlotkin spoke to his students heatedly about political and racial subjects, espousing his views. The specific remarks made by Zlotkin were as follows:

> Because I've been working for twenty years, and I don't really care who you are or what color you are. I don't care where you came from. I worked three jobs every f–ing day of my life and you know what I have one kid, not seven because I can't afford seven.
>
> . . . .
>
> I lost a house because I was out of work, I worked two careers. I reinvented myself. I never gave up and I don't give up, but I hear people whining and crying about Black Lives Matter, but George Floyd was a f–ing criminal and he got arrested and he got killed because he wouldn't comply, and the bottom line is we make him a f–ing hero. He's not a hero, he's like a criminal just like f–ing Tawana Brawley and you know what, Tawana Brawley lied, and ruined people's lives and you guys emulate people . . . that just are f–ing wrong, that are criminals, and you're making them right because they're black or because they got a bad story. Everybody's got a bad story. Half the planet's starving to death and they're not whining.
>
> . . . .

A-1560-24

> But the ladies that run Black Lives Matter own five houses and are multimillionaires and they don't give a s–t. They're making money off people and we're fighting each other. We're gonna fall apart, and I'll tell you something right now, that's not equity. Equity is everybody matters – not just one person, not just the other.
>
> . . . .
>
> And I'll tell you something, I ain't f–ing privileged, I come to work. I haven't gotten paid by my black vice principal who thinks I'm f–ing privileged too.

A student then responded to Zlotkin's comments by telling Zlotkin he was privileged. In turn, Zlotkin loudly retorted, "F–k you," and held his middle finger up to the camera, ending the discussion. At least one student recorded Zlotkin's remarks and submitted the video to school administrators.

The following day Zlotkin was notified of his immediate removal from his duties as a science teacher. He submitted a resignation letter effective May 21, 2021. The State Board of Examiners (Examiners) subsequently initiated review proceedings and issued an order to show cause concerning the possible revocation or suspension of Zlotkin's teaching certificates, finding material facts in dispute and referring the matter to the Office of Administrative Law (OAL) for a hearing as a contested case.

4

An ALJ issued an initial decision granting the Examiners' motion for summary decision, acknowledging arguments in favor of revocation, but ultimately recognizing mitigating factors and concluding Zlotkin's conduct, though improper, did not warrant complete revocation, but instead justified a two-year suspension of his teaching certificates. The Examiners accepted this recommendation on April 13, 2023, and ordered a two-year suspension of Zlotkin's certificates.

The Board performed an analysis pursuant to N.J.S.A. 43:1-3 and Uricoli v. Board of Trustees, Police & Firemen's Retirement System, 91 N.J. 62 (1982). It found Zlotkin's conduct to be "grave and substantial, directly related to [his] employment, and involved a high degree of guilt and culpability, as the misconduct occurred during a class in front of [his] students." The Board also found Zlotkin's "misconduct was motivated by the humiliation of [his] students." Consequently, after addressing the eleven Uricoli factors, the Board ordered a forfeiture of ten percent of Zlotkin's monthly pension allowance.

Zlotkin appealed and the matter was transferred to the OAL for a hearing as a contested case. The ALJ issued an initial determination recommending a reduced forfeiture, calculated as sixty-four days of lost service, representing the

period from the date of the incident (April 28, 2021) to Zlotkin's retirement date (July 1, 2021).

The Board issued its final administrative decision. The Board adopted some factual findings from the administrative proceedings, but modified others. The Board also rejected the ALJ's recommendation of a reduced forfeiture, explaining forfeiture from the date of misconduct would result in a minimal reduction and did not reflect the extent and nature of the misconduct as well as the negative attention brought to the school district. The Board then imposed a ten percent forfeiture of Zlotkin's monthly pension benefit. This appeal followed.

## II.

"The standard of review of an ALJ's deemed-adopted decision is a question of law, and therefore we owe no deference to the legal conclusions" of the Board. In re Hendrickson, 235 N.J. 145, 157 (2018). Accordingly, we review the matter de novo. Ibid.

An ALJ's initial determination is "merely a recommendation to the [Board]." N.J. Election Law Enf't Comm'n v. DiVincenzo, 445 N.J. Super. 187, 193 (App. Div. 2016). In reviewing an ALJ's determination, "the agency head may reject or modify findings of fact, conclusions of law or interpretations of

A-1560-24

agency policy in the decision, but shall state clearly the reasons for doing so." N.J.S.A. 52:14B-10(c).

However, "[u]nless the head of the agency modifies or rejects" the ALJ's decision within forty-five days, it "<u>shall</u> be deemed adopted as the final decision of the head of the agency." Ibid. (emphasis added). If the agency cannot render a decision within forty-five days, the statute allows a "single extension of not more than [forty-five] days" where "good cause" is shown. Ibid. A request for such an extension "must be submitted no later than the day on which that time period is to expire." N.J.A.C. 1:1-18.8(b). To request an extension for good cause, the "agency head . . . [must] sign and forward a proposed order to the Director of the [OAL,]" who, if he or she approves the request, "shall within [ten] days of receipt of the proposed order sign the proposed order and return it to the transmitting agency head, who shall issue the order and cause it to be served on all parties." N.J.A.C. 1:1-18.8(e).

Our Supreme Court has explained the Legislature amended N.J.S.A. 52:14B-10(c) "to set a strict deadline for administrative agencies 'to adopt, reject or modify' an ALJ's decision." Hendrickson, 235 N.J. at 158 (quoting N.J.S.A. 52:14B-10(c)). Before the amendment adding the deadline in 2014, the Court held the "'deemed-approved' provision of N.J.S.A. 52:14B-10(c) should be

invoked" when an administrative agency acted "in bad faith, or with inexcusable negligence, or gross indifference, or simply [took] no action . . . 'to adopt, reject or modify'" the ALJ's recommendation within the forty-five-day period. King v. N.J. Racing Comm'n, 103 N.J. 412, 421 (1986). However, "[a]s amended, the statute does not provide a safe harbor for an agency that is unable to act within the prescribed period through no fault of its own." DiVincenzo, 445 N.J. Super. at 198. Indeed, the amendment is strict: "[W]hen the agency does not act within the forty-five-day statutory timeframe—or within the single extension period not to exceed forty-five days—the ALJ's decision is 'deemed adopted as the final decision of the head of the agency.'" Hendrickson, 235 N.J. at 158 (quoting N.J.S.A. 52:14B-10(c)).

The ALJ issued her decision on September 4, 2024. Therefore, pursuant to N.J.S.A. 52:14B-10(c), the ALJ's decision would be deemed adopted unless the Board modified or rejected the decision by October 19, 2024, or requested an extension of the initial forty-five-day period. Indeed, the ALJ's decision contained the following language:

> This recommended decision may be adopted, modified, or rejected by the BOARD OF TRUSTEES OF THE TEACHERS' PENSION AND ANNUITY FUND, which by law is authorized to make a final decision in this matter. If the Board of Trustees of the Teachers' Pension and Annuity Fund does not adopt, modify, or

reject this decision within forty-five days and unless such time limit is otherwise extended, this recommended decision shall become a final decision in accordance with N.J.S.A. 52:14B-10.

The Board voted to reject the ALJ's decision at its November 14, 2024 meeting, almost a month after the deadline had passed and it did not issue its decision until December 6, 2024. The record does not reflect the Board requested an extension. Therefore, the September 4, 2024 ALJ determination must be deemed the final decision of the Board.

Reversed. The ALJ determination dated September 4, 2024, is reinstated.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1560-24