185 N.J. Super. 190 (1982)
447 A.2d 1348
CHARLES H. PITTS, JOHN SCHMIDT, JERRY JENKINS, ALFRED ALTERMAN, AUDREY ALTERMAN, SAJ RANCH LTD., ALBERT C. WINTERS AND SANDRA A. WINTERS, APPELLANTS,
v.
DIVISION OF NEW JERSEY RACING COMMISSION, SURGE STABLES, INC., A CANADIAN CORPORATION AND JOHN KOPAS, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1982.
Decided July 1, 1982.
*192 Before Judges MILMED and GAULKIN.
Joseph M. Nardi, Jr. argued the cause for appellants (Lario & Nardi, attorneys).
Charles J. Hanlon, Jr., Deputy Attorney General, argued the cause for respondent Division of New Jersey Racing Commission (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James R. Zazzali, former Attorney General of New Jersey, and Charles J. Hanlon on the brief).
Ralph J. Pocaro argued the cause for respondents Surge Stables, Inc., and John Kopas.
The opinion of the court was delivered by MILMED, P.J.A.D.
This appeal brings up for review the propriety of two decisions of the New Jersey Racing Commission (Commission), viz.: (1) a ruling of August 11, 1981 reversing "the ruling of the judges at the Meadowlands Racetrack suspending driver John Kopas for a period of five days for violation of N.J.[A].C. 13:71-20.6A.8" and reversing "the disqualification of the horse `Savilla Lobell' following the running of the 6th Race on July 8, 1981," and (2) the denial of a request by appellants Charles H. Pitts, John Schmidt and Jerry Jenkins, for an opportunity to participate in a hearing before the Commission. From our review of the record submitted on the appeal it is clear that the Commission's decisions were arbitrary and unreasonable, and that appellants were deprived of basic rights afforded them by the Administrative Procedure Act, L. 1968, c. 410, as amended and supplemented, N.J.S.A. 52:14B-1 et seq. We, accordingly, reverse and remand for a full plenary hearing upon proper notice, all as mandated by that legislation for a "contested case."
The essential facts may briefly be summarized. On July 8, 1981 harness racing was conducted at the Meadowlands Racetrack. At the conclusion of the sixth race, referred to as the Sweetheart Pace, Benny Webster, the driver of the No. 6 horse, *193 Belanda Hanover, which finished ninth, filed an objection with the judges at the track claiming interference by John Kopas, the driver of the No. 4 horse, Savilla Lobell, which finished first. After viewing a videotape of the race, the three judges, by a unanimous Ruling No. 339A, dated July 9, 1981, notified Kopas that they were suspending him from driving for five days, from July 14 through July 18, "for the following reason":
As the horses were coming down the stretch in the sixth race on July 8, 1981, your horse # 4, Savilla Lobell, bore in and your bike struck the rear legs of the # 6, Belanda Hanover, causing her to go off-stride....
Included in the ruling was the judges' decision that the No. 4 horse, Savilla Lobell, which had "finished 1st," was "placed 10th for interference." The judges concluded the ruling with a reference to N.J.A.C. 13:71-20.6(a)8, which reads:
Although a leading horse is entitled to any part of the track except after selecting his position in the home stretch, neither the driver [of] the first horse nor any other driver in the race shall [c]ommit any act which [will] impede the progress of another horse or cause him to "break."
The decision of the judges was upheld by the State Steward at the Meadowlands. His Ruling No. 342A, also issued July 9, 1981, is addressed to Surge Stable, Inc., the owner of Savilla Lobell. It reads:
After a hearing before the State Steward at The Meadowlands, at which time Brian Webster and Raymond Bednarz, owners of the Surge Stable were present and the photo patrol film of the sixth race of July 8, 1981 was reviewed several times, the disqualification of the filly Savilla Lobell as ordered by the Judges at The Meadowlands in ruling 339A, dated July 9, 1981, is hereby upheld. N.J.[A.]C. Rule 13:71-20.6(a)8.
John Kopas and Surge Stables, Inc. appealed to the Commission. On Monday, July 20, 1981, the Executive Director of the Commission sent notices to the owners of the horses that finished first through sixth advising them as follows:
Appeal of Surge Stable re disqualification of "Savilla Lobell", sixth race July 8, 1981 will be held [Meadowlands] Race Track Tuesday July 21 4:30 PM.
The notice to appellants was forwarded by mailgram. It appears that John Kopas and Surge Stables, Inc. applied to a single judge of this court for a stay of the hearing, which was denied with certain conditions.
*194 The Racing Commission consists of four members. Three, including the chairman, were present when the hearing began at 5 p.m. on July 21. The chairman explained that the fourth member was not able to attend. He also noted:
We will take testimony on this matter. The Deputy Attorney General Charles Hanlon is going to present the case for the State and my understanding is that Mr. Ralph Pocaro will be presenting testimony on behalf of Surge Stable and John Kopas.
Benny Webster, the driver of Belanda Hanover in the Sixth Race on July 8, testified at the hearing, as did Joseph Greenberg, the presiding judge, and William Emerson and Eugene Cossette, associate judges, at the Meadowlands Racetrack. Additionally, a videotape of the race was shown. The hearing was continued to August 10 at 10 a.m. and the Commission's Executive Director gave letter notice to the owners of the horses that finished first through sixth of the time and place of the continued hearing. None of the appellants in the appeal to this court appeared, either personally or by counsel, on either of the two hearing dates. At the August 10 hearing Benny Webster, Joseph Greenberg and William Emerson were further examined and additional witnesses were called and testified. These included Edward Marian, the State Steward at the Meadowlands Racetrack; John Kopas, the driver of Savilla Lobell in the sixth race, and certain persons with knowledge of photography, cameras, engineering and video patrol at race tracks. Videotapes and photos were shown. The testimony was followed by summations by counsel for John Kopas and Surge Stables, Inc., and the Deputy Attorney General, after which the three members of the Commission present, without setting forth any basic findings of fact or conclusions of law, adopted a resolution that
... the penalty against John Kopas assessed during the running of the sixth race on July 8, 1981, be reversed and that the judgment of the officials disqualifying Savilla Lobell for violation NJ, rule 13:71-20.6A8, for the sixth race on July 8, 1981, be reversed.
The Commission's Ruling No. 24-H, dated August 11, 1981, set forth its decision reversing the Racetrack judges' ruling which suspended John Kopas and disqualified Savilla Lobell. This *195 appeal followed. We viewed a videotape of the race and heard oral argument by counsel.
Appellants in this appeal comprise the owners of Willow Bust and Allwyn Bunny, the horses that finished second and third in the Sweetheart Pace at the Meadowlands on July 8, 1981 and moved into first and second place, respectively, as the result of the judges' and steward's rulings. It is, accordingly, obvious that they were "parties affected" by the action taken by the Racing Commission and "entitled to a hearing" before the Commission as provided by N.J.S.A. 5:5-51, upon adequate notice, with the right to "be represented by counsel and ... the right to introduce evidence," with the evidence which is offered "reduced to writing" and with "findings" to be made by the Commission. N.J.S.A. 5:5-53. The hearing prescribed by N.J.S.A. 5:5-51, with the attributes detailed in N.J.S.A. 5:5-53, falls squarely within the ambit of "contested case," as the term is defined in the Administrative Procedure Act, viz.:
... a proceeding, including any licensing proceeding, in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing, but shall not include any proceeding in the Division of Taxation, Department of the Treasury, which is reviewable de novo by the Tax Court. [N.J.S.A. 52:14B-2(b)]
Appellants were, accordingly, entitled to a hearing before the Commission with the full panoply of protections mandated by the Administrative Procedure Act.
The one-day mailgram notice which was sent by the Commission's Executive Director obviously did not fulfill the "reasonable notice" requirements of N.J.S.A. 52:14B-9. Beyond this, while the hearing which was called could properly be conducted by the members of the Commission directly rather than by an administrative law judge, see N.J.S.A. 52:14F-8(b), the manner in which the issue before the Commission was heard and determined fell far short of the requirements of N.J.S.A. 52:14B-10. For example, paragraph (d) of N.J.S.A. 52:14B-10 requires, in pertinent part, that:

*196 A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated and shall be based only upon the evidence of record at the hearing....
Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings....
Here, the one sentence decision ("Ruling") issued by the Commission on August 11, 1981, is entirely lacking in findings and conclusions required by the statute. The prefatory phrase in the decision, i.e.; "[a]fter reviewing all of the evidence," is clearly not a finding of fact. As stated by the court in New Jersey Bell Tel. Co. v. Communications Workers, etc., 5 N.J. 354 (1950):
... The requirement of findings is far from a technicality and is a matter of substance. It has been said that it is a fundamental of fair play that an administrative judgment express a reasoned conclusion. Federal C.C. v. Pottsville Broadcasting Co., 309 U.S. 134 [60 S.Ct. 437], 84 L.Ed. 656 (1940). A conclusion requires evidence to support it and findings of appropriate definiteness to express it. [at 375]
And the findings must be
... sufficiently specific under the circumstances of the particular case to enable the reviewing court to intelligently review an administrative decision and ascertain if the facts upon which the order is based afford a reasonable basis for such order. [at 377]
Because of its lack of findings, the August 11, 1981 decision of the Commission is of no use to us as a tool for our administrative review. This is particularly so in view of the explicit observations of the Racetrack judges in their testimony before the Commission on July 21, 1981. Joseph Greenberg, the presiding judge at the track, testified that after viewing the videotape of the Sweetheart Pace "[n]umerous times" with his two associate judges Eugene Cossette and William Emerson, "[w]e formed the [unanimous] opinion that Mr. Kopas's horse swerved and hit Mr. Webster's [horse's] legs, causing him to go off." Associate track judge Emerson testified that after viewing the videotape of the race his "conclusion as to the interference during that race" was that:
Mr. Kopas was driving Savilla Lobell and he hit his filly. She ducked and struck the hind legs, the right hind legs [sic] of Bilanda Hanover, causing her to go off stride.
*197 Eugene Cossette, the other associate track judge, testified that after viewing the videotapes of the race he concluded that "Mr. Kopas's horse had struck the ... legs of Mr. Webster's horse"; specifically, that
Mr. Webster was coming out and Mr. Kopas was coming outside of his stretch and the horse struck the right hind legs [sic] of Mr. Webster's horse.
The decisions of the New Jersey Racing Commission under review are reversed. The matter is remanded to the Commission for a full plenary hearing consistent with this opinion, upon proper notice to appellants and all other parties affected by its "Ruling" of August 11, 1981, and the filing of a determination, with appropriate findings and conclusions, all as mandated for a "contested case" by the Administrative Procedure Act.
We do not retain jurisdiction.