JAMES KING, JR., APPELLANT, v. NEW JERSEY RACING
COMMISSION, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 30, 1985—Decided November 22, 1985.

412

Before Judges KING, SIMPSON and SCALERA.

*Michael D. Schottland* argued the cause for appellant (*Chamlin, Schottland, Rosen, Cavanagh & Uliano,* attorneys; Mr. *Schottland,* on the brief).

*Michael J. Haas,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel and *Mr. Haas,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

SIMPSON, J.A.D.

James King, Jr., a licensed harness driver, appeals from the January 8, 1985 final administrative action of the New Jersey Racing Commission (NJRC) suspending King from racing for six months. The NJRC found that King drove a horse, Nancy's Best Bet, in the 8th race at Freehold on March 31, 1984 "with design to prevent his winning" in violation of *N.J.A.C.* 13.71–20.10(a). On April 5, 1984, a board of three judges, including presiding Judge Peter Virag, reached the same conclusion and imposed the same suspension pursuant to *N.J.A.C.* 13.71–8.2 and 13.71–8.13, and on April 19, 1984 state steward Richard J. O'Donnell affirmed the finding and six months suspension. *N.J.A.C.* 13.71–8.3 and 13.71–8.13. King appealed to the NJRC pursuant to *N.J.A.C.* 13:71–3.1 and the matter was referred to the Office of Administrative Law as a contested case pursuant to *N.J.S.A.* 52:14B–1 *et seq.* and *N.J.S.A.* 52:14F–1 *et seq.* In his Initial Decision of September 6, 1984 the Administrative Law Judge (ALJ) concluded that no violation had occurred and King should not be suspended unless the NJRC modified or rejected this recommended decision in a final decision within the time limits provided in *N.J.S.A.* 52:14B–10.

Most of the operative facts are not disputed. Nancy's Best Bet was a rough-gaited horse that was difficult to drive. Nevertheless, King drove an excellent race, at least to approximately the final 95 feet of the home stretch. At that point a horse in front of King's broke stride and the driver pulled to the outside. King then steered his horse to the left and finished second to the winning horse by a head. As he steered Nancy's Best Bet to the inside, King "grabbed" his horse and

the judges, state steward, and NJRC concluded that he thereby slowed his horse to avoid winning the race. Appellant and several other drivers testified that King properly grabbed Nancy's Best Bet to prevent her from breaking stride and being disqualified. The videotape shows that King took hold of his horse at a crucial point in the race, but the witnesses and experts drew different conclusions as to whether he steadied her to salvage second place or slowed her down to avoid finishing first. On this appeal King contends that:

I. THE NJPC HAS NEVER OFFICIALLY ACTED UPON THE KING APPEAL AND UNDER THE SPECIFIC TERMS OF *N.J.S.A.* 52:14B–10(c), THE DECISION OF OAL JUDGE THOMAS CLANCY DISMISSING THE CHARGES IS THE FINAL DECISION.

II. THE NJRC IMPROPERLY REJECTED THE CREDIBILITY FINDINGS OF JUDGE CLANCY.

III. TRADITIONAL NOTIONS OF DUE PROCESS AND FAIRNESS SHOULD PREVENT THE NJRC FROM BASING A FINDING OF A VIOLATION OF ITS RULES PRIMARILY UPON THE SUBJECTIVE OPINIONS OF ITS OWN EMPLOYEES.

IV. CONSIDERING THE ENTIRE RECORD, THERE IS INSUFFICIENT EVIDENCE TO CONCLUDE THAT MR. KING INTENTIONALLY DETERMINED NOT TO WIN THE RACE.

V. IMPOSITION OF A FULL SIX–MONTH SUSPENSION WITHOUT ANY EXPLANATION, VIOLATES BASIC PRECEPTS OF FAIRNESS AND IS A SHOCKING EXAMPLE OF ADMINISTRATIVE ARBITRARINESS AND ABUSE.

Our careful review of the entire record and the arguments in support of Points II through V satisfy us that the decision of the NJRC is supported by sufficient credible evidence on the record on the whole and the issues of law raised are clearly without merit. *R.* 2:11–3(e)(1)(D) and (E). See also, as to Points II, III and IV, *DeVitis v. New Jersey Racing Com'n.*, 202 *N.J.Super.* 484 (App.Div.1985). As to Point V, the reliance upon *Pitts v. N.J. Racing Com'n.*, 185 *N.J.Super.* 190 (App.Div.1982), certif. den. 97 *N.J.* 693 (1984), is misplaced since that case involved only a one sentence decision entirely lacking in findings and conclusions. Here the exhibits included the lengthy past record of King's violations of the racing rules and we are convinced that the punishment, if the NJRC decision is

otherwise valid, is not so disproportionate to the offense as to be " 'shocking to one's sense of fairness.' " *In re Polk License Revocation*, 90 *N.J.* 550, 578 (1982) (quoting *Pell v. Bd. of Education, Etc.*, 34 *N.Y.*2d 222, 313 *N.E.*2d 321, 356 *N.Y.S.*2d 833, 841 (1974)).

With respect to Point I, there were four members of the NJRC, pursuant to *N.J.S.A.* 5:5–23[1] on January 8, 1985 when King was suspended. When the NJRC decided this case, Commissioner Eugene Jacobson was absent. Chairman Stuart O. Goldsmith had recused himself from the proceedings, although he was physically present for the transaction of other NJRC business. The final decision was made and signed only by Commissioners William E. Marfuggi, Sr. and George J. Minish. *N.J.S.A.* 5:5–29 provides, in pertinent part, that "A majority of the commission shall constitute a quorum for the transaction of any business, for the performance of any duty, or for the exercise of any power of the commission." The initial inquiry is whether Goldsmith can be counted towards a quorum, since three commissioners are obviously required to provide a majority quorum of a four-person commission. The common law rule and the rule in this state is that a majority of a quorum may act for a body, absent a pertinent statute to the contrary. *FTC v. Flotill Products*, 389 *U.S.* 179, 183, 88 *S.Ct.* 401, 404, 19 *L.Ed.* 2d 398, 402 (1967); *Morgan v. Saslaff*, 123 *N.J.Super.* 35, 37 (App.Div.1973). However, a member who is disqualified may not generally be counted in order to make up a quorum. 73 *C.J.S., Public Administrative Law and Procedure,* § 20 at 392 (1983). This is also the general rule in state and federal courts in New Jersey. *Metropolitan Telephone Co. v. Domestic Telegraph Co.*, 44 *N.J.Eq.* 568 (E. & A.1888); *Florham Park v. New Jersey Dep't of Health*, 7 *N.J.Misc.* 549, 146 *A.* 354

---

[1]The statute was amended by *L.* 1984, *c.* 247, § 1 effective January 7, 1985 to increase the NJRC from four to seven members, but the additional three members had apparently not been appointed and confirmed by January 8, 1985.

(Sup.Ct.1929); *Application of Shapiro,* 392 *F.*2d 397 (3d Cir. 1968). It follows that if a disqualified member cannot act, a contrary rule recognizing his presence as part of the quorum would vitiate the very purpose of having a quorum in the first place. *Id.* at 400. The NJRC, however, relies upon *Morgan v. Saslaff, supra,* in arguing that Goldsmith's mere presence may be counted towards the quorum requirement. There three members of a five-person Real Estate Commission heard a case involving a broker's license suspension, but only two "rendered the judgment." *Id.,* 123 *N.J.Super.* at 37. The opinion is silent as to whether the third member who "heard" the matter was disqualified or in fact dissented. In any event, it is not authority for the asserted proposition that a disqualified member may be counted towards a quorum and we believe that the better rule is to the contrary. *Aurentz v. Planning Board of Tp. of Little Egg Harbor,* 171 *N.J.Super.* 135, 141 (Law Div.1979). The further contention that Goldsmith should be counted towards a quorum because there was an insufficient showing that he was "disqualified" is not persuasive. The chairman had "recused" himself, albeit at the request of King's counsel, and such voluntary recusal is tantamount to disqualification. Accordingly, we conclude that there was no quorum and therefor no valid action by the NJRC in reversing the Initial Decision of the ALJ.

█ The next inquiry is whether the ALJ decision is final or there should be a remand for further action by the NJRC. In pertinent part, *N.J.S.A.* 52:14B–10(c) provides that:

The head of the agency, upon a review of the record submitted by the administrative law judge, shall adopt, reject or modify the recommended report and decision no later than 45 days after receipt of such recommendations. Unless the head of the agency modifies or rejects the report within such period, the decision of the administrative law judge shall be deemed adopted as the final decision of the head of the agency.... For good cause shown, upon certification by the director and the agency head, the time limits established herein may be subject to extension.

Two extensions of time within which to act were sought and received by the NJRC, and the second extension would have

expired on January 11, 1985. There is nothing in the record to suggest that a third extension could not have been obtained. The purported NJRC action of January 8, 1985 was void; hence the ALJ decision is deemed adopted by the NJRC as of January 11, 1985. The NJRC reliance upon *In re Kallen*, 92 *N.J.* 14 (1983) in suggesting a remand is misplaced. King does not dispute the fact that "... the agency head has the exclusive authority to make the final determination in a contested case." *Id.* at 21. Instead he contends, and we agree, that the NJRC is bound by the "deemed adopted" provision of *N.J.S.A.* 52:14B–10(c) because they failed to act validly within the extended time period for final action to modify or reject the ALJ Initial Decision.

The January 8, 1985 decision of the NJRC is reversed and the matter remanded solely for the processing of the September 6, 1984 Initial Decision of the ALJ as the final agency decision in this matter. We do not retain jurisdiction.