NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3720-23

IN THE MATTER OF
THE APPEAL OF THE DENIAL
OF MIKHAIL POLATOV'S
APPLICATION FOR A
FIREARMS PURCHASER
IDENTIFICATION CARD AND
PERMIT TO PURCHASE A
HANDGUN.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 18, 2026**
>
> **APPELLATE DIVISION**

Submitted November 18, 2025 – Decided March 18, 2026

Before Judges Sumners, Chase and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. GPA-0018-23.

Evan F. Nappen Attorney at Law PC, attorney for appellant Mikhail Polatov (Robert B. Bell, of counsel and on the briefs).

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (Deepa S. Jacobs, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

SUMNERS, JR., C.J.A.D.

In this case of first impression, we must interpret recent amendments to N.J.S.A. 2C:58-3(c)(5). The statute previously prohibited the issuance of a

permit to purchase a handgun (PPH) and a firearms purchaser identification card (FPIC) "[t]o any person where the issuance would not be in the interest of the public health, safety or welfare."  In 2022, the Legislature amended the statute by concluding it with the phrase:  "because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm."  L. 2022, c. 131, § 2.

Mikhail Polatov appeals a June 13, 2024 Law Division order denying his application for a FPIC and a PPH under the recent amendment.  The trial court denied his application because he lacked "the essential character of temperament necessary to be entrusted with a firearm" under N.J.S.A. 2C:58-3(c)(5).  The trial court reasoned that Polatov was not truthful to the court about the disposition of and circumstances surrounding a 2011 shoplifting offense in New York that was resolved through an administrative dismissal.

We reverse.  Polatov's PPH and FPIC application should have been granted because the trial court's reliance on its credibility determination regarding the 2011 offense, which does not disqualify his application, is not a basis under the amended N.J.S.A. 2C:58-3(c)(5) to deny the application.

I.

Polatov is a fifty-year-old Russian-born Bergen County resident.  He is married with two children, has a master's degree in computer science, and has

worked in software development for over ten years. He has no history of disqualifying factors: felony convictions, domestic violence, juvenile delinquency adjudications, disorderly persons convictions, alcoholism, substance abuse, mental health illness, or being on a terrorist watchlist. Polatov has extensive firearm training from his time in the Polish Military.

A. July 2020 FPIC and PPH Application

On July 9, 2020, Polatov applied online to the Demarest Police Department for an FPIC and ten PPHs. Sergeant Anthony Dimitriadis, a twenty-one-year veteran of the police department, investigated Polatov's application. A criminal background check revealed that in September 2001, Polatov was arrested and charged with driving a motor vehicle while impaired in Iowa City. Polatov pled guilty to an amended charge for consumption of an alcoholic beverage and paid a fine; he served no jail time. The background check also revealed Polatov's arrest in New York but did not specify the offense.

Polatov's application did not mention the New York arrest. The application only requires the disclosure of "a crime in New Jersey or a criminal offense in another jurisdiction where [the applicant] could have been sentenced to more than six months in jail that has not been expunged or sealed." After unsuccessful efforts to obtain more information about the arrest from New

3

York officials, Sergeant Dimitriadis contacted Polatov but Polatov did not want to discuss the matter. Sergeant Dimitriadis explained to Polatov that he could not legally purchase ten guns with one permit. See N.J.S.A. 2C:58-2(a)(7). Polatov thus amended his request to purchase two guns. Sergeant Dimitriadis recommended Polatov's amended application be denied.

Demarest Police Chief Christopher Bianchi accepted Sergeant Dimitriadis' recommendation. The chief sent a letter to Polatov "denying [Polatov's] permit request . . . as per [N.J.S.A.] 2C:58-3(c)" because he "failed to disclose the [New York] incident on [his] application." Polatov retained counsel and appealed to the Law Division.

On August 12, 2021, the trial court held a de novo hearing to determine whether good cause existed for the denial of Polatov's application. Defendant testified that in 2011, he was arrested in New York for shoplifting a wallet from a department store. He claimed that it was an "honest mistake" because he did not need the wallet and he must have inadvertently walked out with it because he was leaving the store in a hurry after receiving a call from his wife. After explaining that the charges were resolved with adjournment in contemplation of dismissal (ACD),[1] the following colloquy occurred:

---

[1] ACDs are temporary adjournments granted prior to the entry of a guilty plea or trial "with a view to ultimate dismissal of the accusatory instrument in

THE COURT: All right. So, in New York, when this case was resolved, did you get up before a judge like you did with me, raise your hand under oath, and admit that you took that wallet and tried to leave the store without paying? Did you admit that to a judge?

[POLATOV]: From what I remember, I did.

THE COURT: You did?

[POLATOV]: Right.

THE COURT: So, you got up, under oath, and you swore to tell the truth to the judge, and you told the judge that you took that wallet and tried to leave the store without paying, knowing that you had that wallet. You admitted to that —

[POLATOV]: I don't remember the specifics of the New York court case. It was handled by the lawyer.

THE COURT: Hold on now. Hold on now. When the case was resolved — I'm going to ask you again. Did you go to the court, get up in front of a judge, swear to tell the truth, and admit that you tried to steal the wallet?

[POLATOV]: I did.

THE COURT: You did. Okay. So, let me ask you. This is very important, now, okay? So, were you telling the truth to the judge when you raised your hand under oath and said that you were trying to steal the wallet?

[POLATOV]: I did.

_____

furtherance of justice" if the case is not restored within a certain period. N.Y. Crim. Proc. Law § 170.55 (McKinney 2015).

THE COURT: You were telling the truth.

[POLATOV]: Right.

THE COURT: Okay . . . here's what I don't understand. You're telling me that you told the judge in New York the truth when you admitted that you tried to steal the wallet. But now, you're telling me that you weren't trying to steal the wallet. It was an honest mistake. So, who are you telling the truth to?

At the hearing's conclusion, the court placed its decision on the record denying Polatov's application. The court first noted that the Iowa intoxication offense "carr[ied] absolutely no weight" in its decision, and that Polatov was "under no obligation to disclose" the Iowa and New York offenses in his application. The court, however, denied the application because it found that he "either lied to the judge in New York or is lying to [the court] today. And for that reason, [the court] [drew] a negative inference from his testimony, and [it] [did] not find his testimony credible." The court determined that "there would be risk and a concern that it would not be in the interest of the public health, safety, and welfare to grant th[e] appeal." The next day, the court memorialized the denial of Polatov's application in an order. Polatov did not challenge the order to this court.

B. October 2023 FPIC and PPH Application

After moving to Harrington Park, Polatov submitted another online application for a FPIC and a PPH on October 16, 2023, to the Harrington Park

Police Department. In response to the application's question about whether he "ever had a [FPIC,] . . . [PPH], or any other firearms license or application refused or revoked in New Jersey or any other state," Polatov responded "Yes." He attributed the denial to his failure to disclose his Iowa intoxication charge but did not mention the New York conviction, nor the 2021 hearing.

Harrington Park Police Patrolman James LaVigna investigated the application. His report noted the trial court's 2021 denial of Polatov's FPIC and PPH application to the Demarest police department. It also stated:

> Polatov's application did not contain any information regarding his denied appeal in Bergen County Superior Court . . . . I consulted with [Bergen County] Assistant Prosecutor Tom Osadnik, who was also mentioned as appearing on behalf of the State of New Jersey along with his legal intern, Keith Bendul on [the court's] order. AP Osadnik recommended denying Polatov based on [the trial court's] previous ruling which described [Polatov] to be unfit.

In an undated letter, Harrington Police Chief Robert Murphy advised Polatov that his FPIC and PPH application was denied. The letter stated, "the issuance would not be in the interest of the public health, safety, or welfare because the person is found to be lacking the essential character o[f] temperament necessary to be entrusted with a firearm." Polatov appealed to the Law Division.

On June 5, 2024, the same trial court which held the August 2021 hearing conducted a de novo hearing to determine whether good cause existed for the denial of Polatov's application with Harrington Park.[2]  Polatov testified that he did not disclose his New York arrest "because there was no conviction."  Polatov maintained that leaving the department store without paying for the wallet was an honest mistake.  Yet, when presented with his 2021 hearing testimony about whether he admitted guilt before the New York judge, Polatov stated that he did not "recall admitting anything to [the] New York judge.  To my best recollection all I had to do [was] . . . say my first, my last name . . . [a]nd I [did not] have to admit nor deny any guilt."

The colloquy regarding Polatov's clarification of his 2021 hearing testimony concerning the New York offense followed:

> THE STATE:  Is it your testimony now that the testimony that you gave [the court] in 2021 was not truthful?
>
> [POLATOV]:  As I said[,] I think it was a misunderstanding because I do not remember admitting any guilt to [the] New York judge.
>
> . . . .

---

[2]  The hearing also addressed denial of the FPIC and PPH applications by Polatov's wife.  The couple agreed to joint legal representation, waiving potential conflicts of interest claims.  The denial of her application is not before us.

A-3720-23

[THE STATE]: What did you not understand when [the court] said did you go in front of a judge in New York and admit that you were telling the truth?

[POLATOV]: Because I couldn't admit any guilt to [the] New York judge. I was given [ACD] which [is] neither [an] admission nor conviction of guilt.

[THE STATE]: So[,] is it your testimony that now, three years later, now you're remembering what happened in the New York case more clearly?

. . . .

[POLATOV]: I see, I did answer some questions to [the] [j]udge not the way that I should have. Because I admitted [to] the [j]udge, I had to admit that I admitted the guilt to [the] New York judge which (indiscernible) didn't happen.

[THE STATE]: You're saying that did not happen?

. . . .

[POLATOV]: It did not, it did not happen. I could [not] have admitted the guilt because I was offer[ed] [ACD].

THE COURT: But in the next breath you tell me you don't recall exactly what happened.

At the hearing's conclusion, the court issued an oral decision denying Polatov's application. The court declined to deny Polatov's application based on a false statement, finding that the State had not met its burden to establish that Polatov had knowingly falsified information on his application, N.J.S.A. 2C:58-3(c)(3). However, the court found that Polatov demonstrated "a

9

continued dishonesty, lack of candor, contradiction and minimization of what occurred in 2011 . . . but [is] now attempting to back off from it." The court thus denied Polatov's application under N.J.S.A. 2C:58-3(c)(5) for "lacking the essential character of temperament necessary to be entrusted with a firearm."

On June 13, 2024, the court issued an order memorializing its oral decision. This appeal followed.

II.

Polatov argues that the trial court abused its discretion and erred as a matter of law by disqualifying him for a FPIC and PPH under N.J.S.A. 2C:58-3(c)(5) on the sole basis that it found his testimony regarding his New York offense to be dishonest. Polatov argues there is no case law supporting the trial court's denial of his application. He further avers, denials under N.J.S.A. 2C:58-3(c)(5) are reserved for "individuals who engaged in 'repetitive misconduct'" and are "currently unfit," not credibility determinations arising from an application's evidentiary hearing.

Polatov also contends that N.J.S.A. 2C:58-3(c)(5) is facially unconstitutional under New York State Rifle & Pistol Assoc., Inc. v. Bruen, 597 U.S. 1 (2022), because it is overly discretionary and not "narrow, objective, and definite" as the Second Amendment requires, and under United States v. Rahimi, 602 U.S. 680 (2024), because it "far more nebulous and

vague than claiming an [applicant] is not responsible" to obtain a gun permit. For the first time on appeal, Polatov contends, that as applied, N.J.S.A. 2C:58-3(c)(5) permanently disarms him in contradiction of Rahimi.

The State asserts the trial court properly denied Polatov's application based on N.J.S.A. 2C:58-3(c)(5) because it "operates in conjunction" with the statute's "falsification disqualifier to prohibit giving false testimony at the firearm permit application hearing." The falsification disqualifier states that a FPIC or PPH shall not be issued to "any person who knowingly falsifies any information on the application form for a handgun purchase permit or [FPIC]." N.J.S.A. 2C:58-3(c)(3). The State relies on caselaw showing instances where "the facts do not quite rise to the level of [N.J.S.A. 2C:58-3's] disabling conditions," In re M.U.'s Application, 475 N.J. Super. 148, 179-80 (App. Div. 2023), but disqualification was held proper under N.J.S.A. 2C:58-3(c)(5) because denial was nonetheless in the interest of the public health, safety, or welfare. The State argues that although Polatov "may not have explicitly falsified his application form as prohibited under [N.J.S.A. 2C:58-3(c)(3)], . . . falsely providing testimony in connection with the application" should nonetheless disqualify him under N.J.S.A. 2C:58-3(c)(5).

As for Polatov's constitutional arguments, the State contends N.J.S.A. 2C:58-3(c)(5) is constitutionally permissible because it correctly disqualifies

an applicant from obtaining a gun permit who poses a threat to the public. The State also maintains this court should not address Polatov's as-applied challenge because it was not raised before the trial court. Alternatively, it argues this court rejected a similar disarmament argument in the Matter of M.G., No. A-1249-23 (App. Div. June 19, 2025) (slip op. at 13-15), where we held that Rahimi did not foreclose the possibility of permanent disarmament simply because it sanctioned temporary disarmament of dangerous individuals.

III.

"In order to lawfully acquire a firearm in New Jersey, one must have first secured a [FPIC] and, in the case of a handgun, a [PPH]." In re Winston, 438 N.J. Super. 1, 6 (App. Div. 2014). Acquiring these documents is governed by N.J.S.A. 2C:58-3, which lists several disqualifying circumstances. In re Z.L., 440 N.J. Super. 351, 356 (App. Div. 2015). Most disqualifications "focus on the applicant's background or suitability to possess a firearm." In re R.W.T., 477 N.J. Super. 443, 466 (App. Div. 2023). For example, N.J.SA. 2C:58-3(c)(1) disqualifies individuals with felonies or certain disorderly persons offenses; N.J.S.A. 2C:58-3(c)(2) and (3) disqualifies individuals "presently confined for a mental disorder" or those "suffer[ing] from a physical defect or disease which would make it unsafe for that person to handle firearms"; and N.J.S.A. 2C:58-3(c)(6) disqualifies those who have "violated a

12                                                                          A-3720-23

temporary or final restraining order issued pursuant to the 'Prevention of Domestic Violence Act of 1991, [N.J.S.A. 2C:25-17 to -35].'"

Prior to 2022, N.J.S.A. 2C:58-3(c)(5), disqualified "any person where the issuance would not be in the interest of the public health, safety or welfare." This provision explicitly addresses an "applicant's background or suitability to possess a firearm." R.W.T., 477 N.J. Super. at 466.

The State correctly points out that N.J.S.A. 2C:58-3(c)(5) has been used "in conjunction with the specific disabilities identified under various subsections of N.J.S.A. 2C:58-3(c)." M.U., 475 N.J. Super. at 179-80. For example, we affirmed an applicant's denial of a PPH and FPIC under N.J.S.A. 2C:58-3(c)(5) based on his "unlawful activities" such as vandalizing property and stealing a trailer, although the incidents were not "criminal convictions that would be specifically disabling under N.J.S.A. 2C:58-3(c)(1)." Id. at 196. In a different context, our Supreme Court found that though an applicant did not suffer from a "diagnosable disorder" sufficient to disqualify him under N.J.S.A. 2C:58-3(c)(2) and (3), he could "nonetheless be disqualified under N.J.S.A. 2C:58-3(c)(5) because of . . . elements of 'narcissistic, anti-social, or paranoid personality disorder' as explained by [an expert witness]." In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 513 (2016). We have also denied an application under

13

A-3720-23

N.J.S.A. 2C:58-3(c)(5) due to allegations of domestic abuse, where there has been "a judicial declaration that [an applicant] poses a threat to the public health, safety or welfare . . . [based upon] an assessment of the threat [an applicant] may impose to the general public." State v. Cordoma, 372 N.J. Super. 524, 535 (App. Div. 2004).

In 2022, the Legislature amended N.J.S.A. 2C:58-3(c)(5). Previously, the provision only stated that a FPIC and a PPH must be denied to "any person where the issuance would not be in the interest of the public health, safety or welfare." N.J.S.A. 2C:58-3(c)(5). The amendment added to the end of the provision "because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm." L. 2022, c. 131, §2. Since the amendment, no caselaw has defined the meaning of "essential character of temperament." Therefore, we look to the terms' common meaning. See N.J. Election Law Enf't Comm'n v. DiVincenzo, 451 N.J. Super. 554, 576 (App. Div. 2017) (citation and internal quotation marks omitted) ("We give the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole.").

"Essential" can be defined as "something basic." Merriam-Webster's Collegiate Dictionary 558 (12th ed. 2026). "Character" is defined as "the

aggregate of distinctive qualities characteristic of something," id. at 279, and "temperament" as "mode of emotional response," id. at 1619. Considering these definitions, we conclude that essential character of temperament means the basic defining qualities of a person's emotional response. To lack the basic qualities of one's emotional response means to have no stable or consistent emotional core necessary for responsible action—in other words, to be so volatile that armament would endanger "the interest of the public health, safety or welfare." N.J.S.A. 2C:58-3(c)(5). Moreover, this interpretation accords with N.J.S.A. 2C:58-3(c)(5)'s "focus on whether the applicant, armed with a firearm, poses a danger to the public." Koons v. Platkin, 673 F. Supp. 3d 515, 563 (D.N.J. 2023) (analyzing N.J.S.A. 2C:58-3(c)(5) as amended).

Unlike the other provisions in N.J.S.A. 2C:58-3(c) discussed above, which focus on the individual fitness of the applicant, the falsification provision "does not impose substantive limitations on who is qualified to obtain a firearm." R.W.T., 477 N.J. Super. at 466. Its concern is with safeguarding the process of the gun licensing scheme—not inquiring into individual fitness. By contrast, N.J.S.A. 2C:58-3(c)(5) is explicitly about whether the applicant has "the essential character of temperament necessary to be entrusted with a firearm." Thus, N.J.S.A. 2C:58-3(c)(5) does not expand the reach of the application's falsification provision.

A-3720-23

IV.

We disagree with the trial court's order denying Polatov's FPIC and PPH application because he lacked the essential character of temperament necessary to be entrusted with a firearm due to his dishonesty about the 2011 shoplifting incident.

We do not find fault with the court's finding that Polatov lied during his 2021 and 2024 hearing testimony concerning the ACD resolution of his 2011 New York shoplifting charge; specifically, his admission of theft and not being able to recall his 2021 hearing testimony at his 2023 hearing. We defer to the court's factual finding. See Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021) (citation and internal quotations omitted) ("We . . . review a trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard.").

However, based upon our de novo review of the interpretation of N.J.S.A. 2C:58-3(c)(5), see Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017), we part company with the court's determination that issuing Polatov a FPIC and a PPH risks the public health, safety or welfare as prescribed in the statute. While our courts have certainly considered an applicant's credibility at the evidentiary hearing into, we find no situation

where it was used as the primary or sole basis for disqualification under N.J.S.A. 2C:58-3(c)(5)—either pre- or post-2022 amendment. As we noted in M.U., while the trial court did not find the applicant's testimony to be credible, the denial of his application was based solely on his "unlawful activities" and evidence that he was "not a law-abiding, responsible citizen." 475 N.J. Super. at 196.

We conclude the court erred in its interpretation of N.J.S.A. 2C:58-3(c)(5) to deny Polatov's application due to the conflicting testimony he gave concerning the pretrial disposition of his 2011 New York shoplifting charge. The determinative factor under N.J.S.A. 2C:58-3(c)(5) "focus[es] on whether the applicant, armed with a firearm, poses a danger to the public." Koons, 673 F. Supp. 3d at 563. Polatov's contradictory testimony about whether he pled guilty in 2011 to an offense, does not support the court's finding that he lacks the essential character of temperament necessary to be entrusted with a firearm because he would be a public danger. There is no evidence that Polatov exhibited behavior—criminal conduct, aggressive behavior, threats of violence, emotional instability, alcoholism, substance abuse, or mental health concerns—that establishes he could not be entrusted with a firearm. Likewise, there is no indication in the record that Polatov's lack of credibility correlated to the absence of the essential character of temperament that would make him

17

more likely than not to be a danger to public health, safety, or welfare if he had a firearm.

Polatov's argument that disqualification under N.J.S.A. 2C:58-3(c)(5) requires sustained or repetitive conduct is without merit. While this court found that N.J.S.A. 2C:58-3(c)(5) disqualified the applicant in M.U., 475 N.J. Super. at 197, in part, because of his repetitive misconduct, it does not necessarily follow that repetitive misconduct is a prerequisite to disqualification under that provision. In Matter of Sbitani, we held the applicant should not be issued a FPIC under N.J.S.A. 2C:58-3(c)(5) because of a single disorderly persons offense that denied him a weapon under a different statute. 216 N.J. Super. 75, 76-77 (App. Div. 1987).

Finally, we decline to address Polatov's constitutional challenges to N.J.S.A. 2C:58-3(c)(5) as they are not "imperative to the disposition" of this matter. Randolph Town Ctr., L.P. v. Cnty. of Morris, 186 N.J. 78, 80 (2006); see also Bell v. Twp. of Stafford, 110 N.J. 384, 389 (1988) ("Generally, [New Jersey] courts will adjudicate the constitutionality of legislation only if a constitutional determination is absolutely necessary to resolve a controversy between parties."). Our conclusion that Polatov's FPIC and PPH application should have been granted because there is no evidence he is disqualified under

18

the statute, makes it unnecessary to determine his arguments that the statute is unconstitutional.

Reversed and remanded for issuance of a FPIC and a PPH to Polatov.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division